UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


PEARSON & SON EXCAVATING
CO., INC., and PEARSON & SON
EXCAVATING CO., LLC

    Plaintiffs,      CIVIL ACTION NO. 03 CV 40246 FL

    v.         DISTRICT JUDGE PAUL V. GADOLA

WESTERN RECREATIONAL    MAGISTRATE JUDGE VIRGINIA M. MORGAN
VEHICLES, INC., a Washington
Corporation,

    Defendant.
_____/


**REPORT AND RECOMMENDATION**

**I. Introduction**

   This is an action brought under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et

seq.*, by Pearson & Son Excavating Co., Inc., and Pearson & Son Excavating Co., LLC, arising

out of their purchase of a motor home manufactured by defendant Western Recreational

Vehicles, Inc., a Washington Corporation ("Western").  Plaintiffs allege that Western failed to

repair and/or failed to properly repair certain defects in the motor home and thereby breached the

written warranty covering the vehicle and the implied warranty of merchantability.

   The matter comes before the court on Western's motion for summary judgment.  By order

dated October 13, 2005, Judge Gadola referred the motion to this court pursuant to 28 U.S.C. §

636 for preparation of a report and recommendation.  The court heard oral argument on

November 16, 2005, and, at the conclusion of the hearing, took the matter under advisement.  For

the reasons stated below, the court recommends that the motion be granted and that plaintiffs'

complaint be dismissed.

## II. Background

As indicated above, there are two entities in this case bearing the name "Pearson & Sons

Excavating Co."  Pearson & Son Excavating Co., Inc. ("the Corporation"), is a Michigan

Corporation.  Albert E. Pearson, Jr. ("Pearson") is the President, Director, and sole shareholder

of that entity.  Pearson & Son Excavating Co., LLC ("the LLC"), is a single member Montana

limited liability corporation located in Missoula.  The sole member of the LLC is the Alfred E.

Pearson, Jr., Living Trust.

In February of 2000, one or both of these entities, through Pearson, purchased a new 2000

Alpine Coach Motor Home from  Michals Enterprises, d/b/a Walt Michal's R.V. Center, a

Michigan Corporation ("Michals"), a Western dealer located in Belleville, Michigan.[1]  The

vehicle was titled and registered in Montana under the name of the LLC.

Over the course of the next three years, or thereabouts, plaintiffs took the Motor Home to

authorized agents/dealers of Western, including Michals, on numerous occasions for repairs for

various electrical, brake, and water leakage problems.  Finally, in August, 2003, the Corporation

filed suit in the Circuit Court for the County of Wayne, State of Michigan, against Western and

---

[1]Michals is no longer a party to this case, having been dismissed by order of Judge
Gadola on July 16, 2004 pursuant to a stipulation executed by the Corporation and Michals.

Michals, alleging that the motor home was never properly repaired.  The Corporation raised eight grounds for recovery in its complaint, including claims for breach of written and implied warranties under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*.[2]  With Michals' consent, Western removed the case to the United States District Court for the Eastern District of Michigan.  Judge Gadola subsequently remanded the state law claims to the Wayne County Circuit Court, leaving only the Magnuson-Moss claims in this proceeding.[3]

Western filed a prior motion to dismiss and/or for summary judgment on the ground that the LLC, as the title owner of the vehicle, was the proper party to bring suit and that the Corporation did not have standing to maintain the cause of action.  The Corporation initially conceded that it was not the proper plaintiff and moved to have the LLC substituted in as the real party in interest.  However, the Corporation subsequently submitted documentation showing that it contributed a portion of the funds used to purchase the motor home, which was paid for in cash.  It then moved to have the LLC added, rather than substituted in, as a plaintiff.  Based upon the documentation submitted by the Corporation, this court determined that the Corporation had a sufficient interest in the outcome of the suit to satisfy the standing requirement.  Further, the court determined that the LLC, as the title owner of the vehicle, should be added as a party-

---

[2]The Corporation also alleged state-law claims for breach of express warranty, breach of implied warranty of merchantability, revocation of acceptance, violation of the Michigan Consumer Protection Act, M.C.L.A. 445.901 *et seq*., breach of contract, and recission.

[3]The parties stipulated at oral argument that the Wayne County Circuit Court sent all of plaintiffs' state law claims to arbitration.  They further stipulated that no arbitration proceedings have been initiated.

plaintiff.  Judge Gadola accepted the court's report and recommendation on these matters.  The

Corporation then filed an amended complaint adding the LLC as a party and, based upon the

remand order, striking all of its state law claims.

Western has filed a second motion for summary judgment, and has raised numerous

ground for dismissal therein.  It contends, primarily, that plaintiffs cannot maintain a claim for

breach of the implied warranty of merchantability because there is no privity of contract between

the parties, that the written warranty does not cover the motor home at issue, and that even if the

court should determine that the written warranty applies, the case must be dismissed based upon

the mandatory arbitration clause contained in the warranty.  Plaintiffs contend that privity of

contract is not required to maintain a breach of implied warranty claim, that the written warranty

is applicable, and that the arbitration clause is unenforceable.

### III. Discussion

#### A. Summary Judgment Standard

Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure

56(b), which states that "[a] party against whom a claim, counterclaim, or cross-claim is asserted

or a declaratory judgment is sought may, at any time, move without or without supporting

affidavits for a summary judgment in the party's favor as to all or any part thereof."  Summary

judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R.

Civ. P. 56(c).  In deciding a motion for summary judgment, the court must view the evidence and

draw all reasonable inferences in favor of the non-movant.  See Matsushita Electric Industrial Co., Ltd. et al. v. Zenith Radio Corp., et. al., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); see also B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 591-92 (6th Cir. 2001).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists.  Street v. J.C. & Bradford Co., 886 F.2d 1472, 1477 (6th Cir. 1989).  Once the moving party has carried its burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial."  Matsushita, 475 U.S. at 587, 106 S.Ct. 1356.  "The nonmoving party must do more than show that there is some metaphysical doubt as to the material facts."  Chao v. Hall Holding Co., Inc., 285 F.3d 415, 424 (6th Cir. 2002).  Rather, "[i]t must present significant probative evidence in support of its opposition to the motion for summary judgment in order to defeat the motion for summary judgment."  Id. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

## B.  Breach of the Implied Warranty of Merchantability

In Count II of their complaint, plaintiffs allege that Western's failure to repair and/or properly repair the motor home constitutes a breach of the implied warranty of merchantability. As noted above, Western contends that plaintiffs cannot maintain such a claim because there is no privity of contract between the parties.

Before turning to the question of privity, a preliminary matter must first be addressed. Western argues primarily that plaintiffs claims should be dismissed in their entirety.  In the alternative, it argues that both of plaintiffs' remaining claims are subject to the arbitration clause set forth in the written warranty and, therefore, that the entire case should be sent to arbitration. For reasons discussed later in this Report and Recommendation, the court finds that the arbitration clause is valid and enforceable.  However, that clause, by its plain language, applies only to "disputes with WRV [Western] arising out of the terms and application of this Limited Warranty."  While "doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," there is no such doubt as to the arbitration provision contained in Western's written warranty.  Javitch v. First Union Securities, Inc., 315 F.3d 619, 624 (6th Cir. 2003). There is nothing in the language of the provision that would permit the court to conclude that plaintiffs' breach of implied warranty claim falls within its scope.  By way of contrast, in, Turdo v. R-Vision, Incorporated, et al., Case No. 04-CV-70220-DT (March 30, 2005, Hood, J.)(see exhibit 12 to Western's motion for summary judgment), a recreational vehicle case involving breach of warranty and various other claims, the arbitration provision contained in the contract of sale read as follows:

> Any controversy arising out of or relating to this agreement, the breach of this agreement, the subject of this agreement, and/or the recreational vehicle sold pursuant to this agreement, shall be resolved by arbitration administered by the office of the American Arbitration Association located in Oakland Count, Michigan, in accordance with its then current arbitration rules.  Arbitration shall be exclusive remedy of the parties.  Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction.

- 6 -

Judge Hood determined that this provision was sufficiently broad to encompass all of the plaintiff's claims, including his implied warranty claims. The arbitration provision contained in Western's warranty is much narrower in scope, as it pertains only to disputes arising out of the terms and application of the warranty itself. The court finds that plaintiffs' implied warranty claim does not fall within the scope of the arbitration provision. Accordingly, the court's conclusion that the arbitration provision is valid and enforceable does not affect plaintiffs' implied warranty claim.

Turning to that claim, § 110(d)(1) of the Magnuson-Moss Act, 15 U.S.C. § 2310(d)(1), provides that "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief[.]" Thus, the Act permits a "consumer" to bring a claim for breach of an "implied warranty." In determining whether plaintiffs may maintain a claim for breach of the implied warranty of merchantability, the court must look to state law. See 15 U.S.C. § 2301(7)("The term 'implied warranty' means an implied warranty arising under State law...in connection with the sale by a supplier of a consumer product"); see also Walsh v. Ford Motor Co., 807 F.2d 1000, 1012 (D.C.Cir. 1986)("[E]xcept in the specific instances in which Magnuson-Moss expressly prescribes a regulating rule, the Act calls for the application of state written and implied warranty law, not the creation of additional federal law"). Though the parties have not explicitly addressed the issue, they appear to agree that Michigan law applies in this matter. The court agrees, and will proceed accordingly.

- 7 -

MCLA 440.2314 covers implied warranties of merchantability.  It provides as follows:

> Unless excluded or modified (section 2316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of the kind.  Under this section, the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.

While the statute clearly provides for the existence of an implied warranty of merchantability in a contract for the sale of goods, the provision is silent on the question of whether vertical privity of contract is required to maintain a claim for breach of the warranty against a remote manufacturer, and the case law on the question is in a state of disarray.  The Michigan Supreme Court has not squarely addressed the issue of whether privity of contract is required to maintain an implied warranty claim under § 440.2314 where, as here, the plaintiff seeks only economic damages.  Further, the Michigan Court of Appeals has issued conflicting opinions on the matter.  See Auto Owners Ins. v. Chrysler, 129 Mich. App. 38, 341 N.W.2d 223 (1983)(privity required); contra Cova v. Harley Davidson Motor Co., 26 Mich. App. 602, 182 N.W.2d 800 (1970)(privity not required).  Judges in both the Eastern and Western Districts of Michigan have reached different conclusions on this issue.  Judges Bell and Quist of the Western District, and Judges Cleland, Cohn, Edmunds, and Steeh of the Eastern District have concluded that vertical privity of contract is required.  See Pitts v. Monarch Coach Corp., 330 F.Supp.2d 918 (W.D.Mich. 2004)(Bell, J.); Parsley v. Monarch Coach Corp., 327 F.Supp.2d 797 (W.D.Mich. 2004)(Bell, J.); Watson v. Damon Corp., 2002 WL 3259736 (W.D.Mich. 2002)(Quist, J.); Treadway v. Damon Corp., 2004 WL 3372010 (E.D.Mich. 2004)(Cleland, J.); Pidock v. Ewing, 371 F.Supp.2d 870 (E.D.Mich. 2005)(Cohn, J.); Ducharme v. A&S R.V.

Center, Inc., 321 F.Supp.2d 843 (E.D.Mich. 2004)(Cohn, J.), aff'd, 127 Fed.Appx. 204 (6th Cir. 2005); Harden v. Ford Motor Company et al., Case No. 04-72036 (October 25, 2005)(Edmunds, J.). Judges Borman, Duggan, and Gadola have reached the opposite conclusion. See Zanger v. Gulfstream Coach, Inc., 2005 WL 2769007 (E.D.Mich. 2005)(Borman, J.); Michels v. Monaco Coach Corp., 298 F.Supp.2d 642 (E.D.Mich. 2003)(Duggan, J.); Leyva v. Coachmen R.V. Co., 2005 WL 2246835 (E.D.Mich. 2005)(Gadola, J.). For the reasons stated in Judge Edmunds recent opinion, this court is of the opinion that privity of contract is required in order to maintain a breach of implied warranty claim against a remote manufacturer where only economic damages are sought. Plaintiffs do not contend that privity of contract exists between them and Western. Accordingly, the court concludes that Western is entitled summary judgment on plaintiffs' breach of implied warranty claim.

### C.  Breach of Express Warranty/Applicability of Arbitration Provision

Upon their purchase of the motor home, plaintiffs received a "Manufacturer's 1 Year Limited Warranty" from Western.  (Exhibit 1, Western's Motion for Summary Judgment) Western contends that the warranty excludes coverage for commercial purchasers and that plaintiffs, as commercial entities, are thus not entitled to the protections of the warranty.  In support of its argument, Western points to the Section 1 of the warranty, entitled "General Terms of Limited Warranty," which states as follows: "Western Recreational Vehicles, Inc. ("WRV") hereby warrants **to the original non-commercial consumer purchaser**, for a period of (1) year from the date of purchase ... or 24,000 miles, whichever first occurs, that the subject Alpine Coach shall be free of *substantial defects* in material and workmanship attributable to WRV."

- 9 -

(emphasis added).  Other provisions of the warranty contain similar language.  Plaintiffs contend, to the contrary, that the exclusion is based not upon the status of the buyer, but upon whether the vehicle has been used for any commercial purpose.  Plaintiffs further contend that the vehicle has not been put to any such use and, therefore, that they are entitled to the protections of the warranty.  In support of their argument, plaintiffs note that the title of the warranty – "Manufacturer's 1 Year Limited Warranty (Noncommercial **Use**)" – refers to use rather than the status of the buyer.  (Emphasis added).  Further, Section 5 of the warranty, entitled "Limitations in Usage," states that "[t]his Limited Warranty is null and void with respect to any **commercial use or use by any commercial purchaser**."  (Emphasis added).

As noted above, "except in the specific instances in which Magnuson-Moss expressly prescribes a regulating rule, the Act calls for the application of state written and implied warranty law, not the creation of additional federal law."  <u>Walsh</u>, <u>supra</u>, 807 F.2d at 1012.  Magnuson-Moss provides no rules governing the interpretation of written warranties.  Accordingly, the court must apply state law rules of contract interpretation in determining whether plaintiffs' motor home is covered under the warranty issued by Western.  <u>See</u>, <u>e.g.</u>, <u>Plymouth Pointe Condominium Ass'n v. Delcor</u>, 2003 WL 22439654 at *5 (Mich.App. 2003)(noting that a "breach of warranty is essentially a breach of contract").  Under Michigan law, "[t]he cardinal rule in the interpretation of contracts is to ascertain the intention of the parties.  To this rule, all others are subordinate."  <u>City of Grosse Pointe Park v. Michigan Municipal Property and Liability Pool</u>, 473 Mich. 188, 198, 702 N.W.2d 106 (Mich. 2005)(quoting <u>McIntosh v. Groomes</u>, 227 Mich. 215, 218, 198 N.W. 954 (1924)).  The court must "first look to [the]

contract's plain language." <u>Wilkie v. Auto-Owners Ins. Co.</u>, 469 Mich. 41, 61, 664 N.W.2d 776 (Mich. 2003). If the language of the contract is clear and unambiguous, the court must enforce the contract as written. <u>Farm Bureau Mut. Ins. Co. of Michigan v. Nikkel</u>, 460 Mich. 558, 566, 596 N.W.2d 915 (1999). If it is ambiguous, the court must construe the ambiguous provision against the drafter. <u>Wilkie</u>, <u>supra</u>, 469 Mich. at 61, 664 N.W.2d 776.

There is language in the warranty supportive of both plaintiffs' position and Western's position on the question of whether it is applicable in this proceeding. The warranty refers to "non-commercial" purchasers, but also suggests that the warranty exclusion applies only to "commercial use." The warranty, read as a whole, is, at best, ambiguous on this point. However, the court need not decide the question in light of the clear and unambiguous language of Section 7 of the warranty – language that both Western and plaintiffs have largely ignored in advancing their respective positions. That section, entitled "Dispute Resolution," states that "[a]ll disputes with WRV arising out of the terms and application of this Limited Warranty shall be resolved through Binding Arbitration under the rules of American Arbitration Association, with any hearing pursuant thereto occurring in Yakima, Yakima County, Washington." The question of whether the warranty coverage is based upon the status of the user or the use to which the vehicle is put is a dispute "arising out of the terms and application" of the warranty and thus falls squarely within the scope of the arbitration provision. <u>See</u>, <u>e.g.</u>, <u>Javitch</u>, <u>supra</u>, 315 F.3d at 624 ("'[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a life defense to arbitrability'" (quoting <u>Moses H. Cone Mem'l</u>

- 11 -

Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)).

Accordingly, if this provision is binding and enforceable, the question of whether the warranty

applies to Western must be submitted to arbitration along with the issue of whether the warranty

was, in fact, breached.

Plaintiffs claim, however, that the arbitration provision is unenforceable for the following

reasons: (1) Western refused or failed to answer plaintiffs' interrogatories requesting information

about the arbitration process and should thus be barred from invoking the arbitration provision,

(2) Western waived the arbitration provision by actively litigating this matter, (3) plaintiffs never

agreed to the arbitration provision, (4) the provision is unconscionable, and (5) the Magnuson-

Moss Act precludes mandatory arbitration clauses.  These arguments are addressed below.

### (1) Western's Failure to Answer Plaintiffs' Interrogatories

Plaintiffs' first argument lacks any merit.  If, as plaintiffs assert, Western failed to provide

responses to plaintiffs' interrogatories regarding the arbitration provision, plaintiffs could have

filed a motion to compel.  They did not do so.  Having failed to seek appropriate relief in a timely

manner, plaintiffs cannot now complain of any prejudice arising from Western's failure to

provide the requested information.  A ruling barring Western from invoking the arbitration clause

based upon its failure to answer the interrogatories would be in the nature of a discovery

sanction.  While a court has the authority under Fed. R. Civ. P. 37(b)(2) to strike an affirmative

defense as a discovery sanction, Western's failure to answer the interrogatories is certainly not so

egregious as to warrant the harsh sanction of barring it from relying upon the arbitration

provision, particularly in the absence of a motion to compel by plaintiffs.

- 12 -

### (2) Waiver

Plaintiff next argues that Western has actively litigated this matter and has thereby waived any right it has to arbitrate the dispute.  There is a strong presumption in favor of arbitration under the Federal Arbitration Act (FAA), 9 U.S.C. § 1, *et seq.*  Glazer v. Lehman Bros., Inc., 394 F.3d 444, 450 (6th Cir. 2005).  Because of this strong presumption, "waiver of the right to arbitration is not to be lightly inferred."  Id.  Nonetheless, "a party may waive the right by delaying its assertion to such an extent that the opposing party incurs actual prejudice," id., or by otherwise engaging in actions which are inconsistent with reliance on the arbitration agreement.  O.J. Distributing v. Hornell Brewing Co., 340 F.3d 345, 356 (6th Cir. 2003).

Plaintiffs do not contend that Western delayed its assertion of the right to arbitrate the parties' dispute.  Thus, the question is whether Western's actions in this litigation have been inconsistent with reliance on the arbitration provision contained in the warranty.  Bearing in mind the strong presumption in favor of arbitration, the court finds that Western's conduct in this litigation does not warrant a finding of waiver.  To be sure, Western has engaged in conduct that is not altogether consistent with strict reliance on the arbitration provision.  Western removed the case to federal court in order to obtain what it apparently perceived to be a more favorable venue, and it has sought dismissal of the case on substantive grounds unrelated to the arbitration provision.  However, Western successfully invoked the arbitration provision in state court, and it sought to compel arbitration of plaintiffs' federal claims in a prior motion for summary judgment filed shortly after the removal of the case.  Thus, in both the state and federal court proceedings, Western has consistently asserted that plaintiffs' claims are subject to the arbitration under the

terms of the written warranty.  Further, while Western has asserted grounds for dismissal

independent of the arbitration provision, the Sixth Circuit has held that "waiver may not be

inferred from the fact that a party does not rely exclusively on the arbitration provisions of a

contract, but attempts to meet all issues raised in litigation between it and another party to the

agreement."  Germany v. River Terminal Ry. Co., 477 F.2d 546, 547 (6th Cir. 1973).  Plaintiffs

point to no other actions by Western that could be construed as inconsistent with reliance on the

arbitration provision.  In addition, plaintiffs' argument that the arbitration provision should be

deemed waived by virtue of Western's failure to reply to their interrogatories is somewhat ironic

in light of their contention that a finding of waiver is warranted based upon Western's active

participation in this litigation.  Had Western replied to those interrogatories, plaintiffs would

have argued, no doubt, that Western's participation in discovery constituted further evidence of

its waiver of the arbitration provision.  Plaintiffs cannot have it both ways.  In any event, the

court finds that Western has not acted in a manner inconsistent with reliance on the arbitration

provision and, therefore, that it has not waived its right to arbitrate this dispute.

### (3) Agreement to Arbitrate

Under Michigan law, "[a]rbitration is a matter of contract, and a party cannot be forced to

submit to arbitration in the absence of an agreement to do so."  Ehresman v. Bultynck & Co., 203

Mich. App. 350, 353-54, 511 N.W.2d 724 (Mich.App. 1994).  Stated differently, in order for an

arbitration agreement to be binding and valid, there must be some manifestation of mutual assent

by the parties.  A party's assent to the terms of a contract may be manifested by his written and

oral statements, as well as his conduct.  See Rood v. General Dynamics Corp., 440 Mich. 107, 119, 507 N.W.2d 591 (Mich. 1993).

Plaintiffs contend that they were not informed of the existence of the arbitration provision prior to their purchase of the motor home and, therefore, that they did not agree to arbitrate any disputes that might arise with Western.  In support of this argument, plaintiffs point to the following paragraphs of the Affidavit of Al Pearson, Jr. (plaintiffs' response brief, Exhibit D):

4.      A copy of the Western Recreational Vehicles, Inc., warranty was never shown to me, explained to me, or otherwise made available to me before I agreed to purchase the 2000 Alpine Coach Motor Home in February 2000.

5.      Before I agreed to purchase the 2000 Alpine Coach Motor Home, no one from Walt Michel's RV Center of Western Recreational Vehicles, Inc., informed me that the Western Recreational Vehicles, Inc., warranty contained an arbitration clause, requiring that warranty disputes be arbitrated in the State of Washington.

6.      I did not receive a copy of the Western Recreational Vehicles, Inc., warranty until March of 2000 when I drove out to the State of Washington to pick up the unit.

Even if the allegations contained in Pearson's affidavit are taken as true, they do not support plaintiffs' contention that no valid arbitration agreement exists.  The record before the court, such as it is, establishes that plaintiffs assented to the terms of the warranty, including the arbitration term, by their conduct. Rood, supra, 440 Mich. 107 at 119, 507 N.W.2d 591.

Plaintiffs concede that upon delivery of the vehicle, they received a copy of the warranty containing the arbitration provision.  Plaintiffs accepted delivery of the vehicle, and then accepted the benefits of the warranty by obtaining numerous repairs thereunder free of charge

- 15 -

from various Western agents/dealers.[4]  Further, plaintiffs' suit is based, in part, on the fact that

Western issued a valid and binding warranty to them.  Thus, plaintiffs have acted at all times, and

continue to act in this litigation, as if the warranty was valid and binding.  Plaintiffs cannot claim

the benefits of the warranty and at the same time seek to have the arbitration provision excised

therefrom on the grounds that they did not specifically assent to that portion of the warranty.  By

their conduct, plaintiffs have assented to *all* of the terms of the warranty, including the arbitration

provision, and not just those terms they deem to be favorable to them.  See, e.g., American

Bureau of Shipping v. Tencara Shipyard S.P.A, 170 F.3d 349, 353 (2d. 1999)("A party is

estopped from denying its obligation to arbitrate when it receives a 'direct benefit' from a

contract containing an arbitration clause")(citation omitted).[5]  Accordingly, the court rejects

plaintiffs' contention that they did not agree to arbitrate their disputes with Western.

---

[4]Western argues, somewhat dubiously, that the numerous repairs performed by its agents/dealers were mere gratuitous repairs and that they were not performed pursuant to the warranty.  Be that as it may, plaintiffs have argued that the repairs were performed under the warranty, and the record demonstrates that they brought the vehicle in for service upon the belief that it was subject to a valid and binding warranty.

[5]See also, e.g., Inter. Paper v. Schwabedissan Maschined & Anlagen, 206 F.3d 411, 418 (4th Cir. 2000)(quoting Avila Group, Inc. v. Norma J. of California, 426 F.Supp. 537, 542 (S.D.N.Y. 1977)):
> In the arbitration context...a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him.  "To allow [a plaintiff] to claim the benefit of the contract and simultaneously avoid its burdens would both disregard equity and contravene the purposes underlying enactment of the Arbitration Act."

### (4) Unconscionability

Plaintiffs next contend that the arbitration provision is unconscionable because they had no opportunity to negotiate with Western regarding its terms, arbitration would be prohibitively expensive, and, under the terms of the provision, they would be forced to travel to the State of Washington to arbitrate the dispute.

Under Michigan law, a party seeking to avoid a contract, or any portion thereof, on the grounds that it is unconscionable must demonstrate that the provision is both procedurally and substantively unconscionable. Andersons, Inc. v. Horton Farms, Inc., 166 F.3d 308, 322 (6th Cir. 1998). In determining whether a contract provision is procedurally unconscionable, the court must consider the relative bargaining power of the parties, whether the contract term in question was negotiable, and whether the party seeking to invalidate the term had any alternate sources with which he could contract. Id. at 322, 324. "As to the potentially burdensome costs of arbitration, the party resisting arbitration has the burden of showing the likelihood that "'arbitration would be prohibitively expensive.'" Burden v. Check Cash of Kentucky, LLC, 267 F.3d 483, 492 (6th Cir. 2001)(quoting Green Tree Fin. Corp. v. Randolph, 531 U.S. 79, 81, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000)). Unconscionability is a question of law and is thus for the court to decide. Andersons, Inc., 166 F.3d at 323.

Plaintiffs have failed to present the court with sufficient evidence regarding the circumstances surrounding the purchase of the vehicle to permit a determination as to whether the arbitration provision is procedurally unconscionable. Plaintiffs' claim of procedural unconscionability rests entirely upon the contention that they did not receive the warranty until

- 17 -

after they purchased the vehicle and thus did not have an opportunity to negotiate the provision.

Even if true, that fact alone does not persuade the court that the provision is procedurally

unconscionable.  Plaintiffs' alleged inability to negotiate the provision may have been as much

their fault as Western's.  There is no question that Pearson was at least aware of the Western

warranty prior to his execution of the purchase agreement on behalf of plaintiffs.  Plaintiffs do

not contend that Pearson asked for and was denied a copy of the warranty, that he was misled as

to its contents, or that he was somehow induced to execute the sales agreement without reading

the warranty.  If Pearson, aware of the warranty, failed to undertake efforts to obtain a copy

and/or failed to read a readily available copy, he must bear some of the responsibility for his

ignorance of the existence of the arbitration provision.  In such case, he cannot claim that he was

denied an opportunity to object to or to negotiate the terms of the provision.  In any event, there

are too many "ifs" surrounding the execution of the sales agreement to warrant this court in

concluding that the arbitration provision is procedurally unconscionable.  A ruling on that issue

would be nothing but sheer speculation.

        Turning to the question of substantive unconscionability, under the terms of the

arbitration provision, the rules of the American Arbitration Association (AAA) are applicable in

any arbitration proceedings between the parties.  Plaintiffs contend that the AAA's cost and fee

structure is prohibitively expensive when compared with the cost of filing suit in a court of law.

In support of this contention, plaintiffs attached to their brief a document purporting to show

AAA's fee structure.  (Exhibit F, plaintiffs' response brief)  The document indicates that for a

claim in the amount of $150,000 to $300,000, (the motor home cost $165,000), the filing party

must pay an initial filing fee of $2,750, plus a case service fee of $1,250.  The document also indicates that these fee amounts do not include the arbitrator's compensation.

As an initial matter, it is not altogether clear whether the fee schedule cited by plaintiffs would be applicable to their dispute.  The document also states that the AAA has a separate fee schedule for "consumer-related disputes" and that the fee schedule was created "to make arbitration costs reasonable for consumers," indicating that the consumer fee schedule, which is not contained in the record, provides for lower fees that the schedule referenced above.  The consumer fee schedule may well apply to plaintiffs' claims.  In any event, plaintiffs have failed to show that the arbitration provision is unconscionable on the ground of cost even if the higher fee schedule is applicable to plaintiffs' claims.  Plaintiffs have not presented any evidence regarding their ability to pay such costs.  Thus, the court cannot determine whether, in fact, such expenses would be prohibitively expensive for plaintiffs.  In this regard, the court notes that plaintiffs are commercial entities and that they paid the $165,000 purchase price for the vehicle in cash. Parties that can readily part with $165,000 in cash to purchase a recreational vehicle cannot seriously claim that $4,000 dollars in arbitration fees is so exorbitantly expensive as to deter them from pursuing their remedies in arbitration.  Further, the fact that plaintiffs would be forced to travel to Yakima, Washington to arbitrate their claims adds little strength to their argument in light of the fact that Pearson traveled to Washington to take delivery of the motor home.  While arbitration of the dispute in a Michigan court would certainly be more convenient for plaintiffs, requiring plaintiffs, or, to put in more accurately, requiring Pearson, to travel to Washington to arbitrate his claims does not seem unduly oppressive in light of the fact that he was able to travel

there to retrieve the vehicle.  In addition, Pearson maintains businesses in both Montana and

Michigan, and he had the vehicle registered and titled in Montana.  It stands to reason that

Pearson must occasionally travel to Montana to tend to his business and personal affairs there.

Thus, it appears that travel poses no significant hardships for Mr. Pearson, financially or

otherwise.

In sum, the court finds that plaintiffs have failed to carry their burden of demonstrating

that the arbitration provision is both procedurally and substantively unconscionable.

### (5) Preclusion Under Magnuson-Moss Act

Plaintiffs' final claim is that the arbitration provision is unenforceable because the

Magnuson-Moss Act precludes the use of binding pre-dispute arbitration provisions.  The court

acknowledges that several courts have reached the conclusion that the Act does, in fact, preclude

binding arbitration of breach of written warranty claims.  See, e.g., Rickard v. Teynor's Homes,

279 F.Supp.2d 910 (N.D.Ohio 2003); Brown v. Kline Tysons Imports, Inc., 190 F.Supp.2d 827

(E.D.Va. 2002); Pitchford v. Oakwood Mobile Homes, Inc., 124 F.Supp.2d 958 (W.D.Va 2000).

However, the court finds more persuasive the contrary position taken by the Fifth and Eleventh

Circuit Courts of Appeal, which are the only circuit courts to have ruled on the issue, in,

respectively, Walton v. Rose Mobile Homes, LLC, 298 F.3d 470 (5th Cir. 2002) and Davis v.

Southern Energy Homes, 305 F.3d 1268 (11th Cir. 2002).  Both the Fifth Circuit and the

Eleventh Circuit carefully considered the legislative history and provisions of the Magnuson-

Moss Act, as well as the FAA, and determined that Congress did not intend to preclude

arbitration of warranty claims pursuant to a valid arbitration agreement.  Judge Cohn discussed

this issue in <u>Pack v. Damon Corp.</u>, 320 F.Supp. 2d 545, 57-58 (E.D.Mich. 2004), stating the

following:

> The Fifth and Eleventh Circuits have held that the MMWA does
> not preclude arbitration of MMWA claims. *Walton v. Rose Mobile
> Homes, L.L.C.,* (5th Cir.2002); *Davis v. Southern Energy Homes,
> Inc.*, 305 F.3d 1268 (11th Cir. 2002). The Sixth Circuit has yet to
> address the issue. A federal district court in the Northern District of
> Ohio recently adopted the dissenting opinion in *Walton,* holding
> that the MMWA precludes enforcement of binding arbitration for
> claims of breach of a written warranty, deferring to the [Federal
> Trade Commission's (FTC)] expertise and promulgation of 16
> C.F.R. § 703.5(j), which provides that: "Decisions of the
> Mechanism [of informal dispute settlement procedure under the
> MMWA] shall not be legally binding on any person." *See Rickard
> v. Teynor's Homes, Inc.,* 279 F.Supp.2d 910 (N.D.Ohio 2003). The
> *Rickard* court limited MMWA arbitration preclusion to only claims
> of breach of written warranties, relying in part on 15 U.S.C. §
> 2310(a)(2): "The [FTC] shall prescribe rules setting forth minimum
> requirements for any informal dispute settlement procedure which
> is incorporated into the terms of a written warranty to which any
> provision of this chapter applies."
>
> In *Davis,* the Eleventh Circuit reasoned that "[i]n every statutory
> right case that the Supreme Court has considered, it has upheld
> binding arbitration if the statute creating the right did not *explicitly*
> preclude arbitration." *Davis*, 305 F.3d at 1273 (emphasis in
> original) (citing *Gilmer v. Intestate/Johnson Lane Corp.*, 500 U.S.
> 20, 35, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991)(ADEA claims);
> *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S.
> 477, 484-486, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989)(Securities
> Act of 1933 claims); *Shearson/American Express, Inc. v.
> McMahon*, 482 U.S. 220, 238, 242, 107 S.Ct. 2332, 96 L.Ed.2d
> 185 (1987) (Securities and Exchange Act of 1934 and RICO
> claims); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
> 473 U.S. 614, 628-640, 105 S.Ct. 2332, 87 L.Ed.2d 444
> (1985)(Sherman Antitrust Act claims)). The *Davis* court applied a
> three factor test articulated in McMahon, 482 U.S. at 222, 107
> S.Ct. 2332, in determining whether Congress intended to preclude
> binding arbitration of MMWA claims: (1) the text of the MMWA;

- 21 -

(2) the MMWA's legislative history, and; (3) whether there is an inherent conflict between arbitration and the underlying purpose of the MMWA. *Id.* at 1273. In examining the text of 15 U.S.C. § 2310(a) and its informal dispute procedures, the *Davis* court reasoned that the availability of non-binding informal dispute procedures does not equate to explicit Congressional intent to preclude enforcement of an otherwise binding FAA arbitration agreement. *Id.* at 1275. As to the second test, *Davis* found the MMWA's ambiguous legislative history regarding binding arbitration was outweighed by the FAA's strong underlying policy favoring arbitration. *Id.* at 1276. In applying the third test, the *Davis* court found that the MMWA's purposes of improving the adequacy of information available to consumers, preventing deception, and improving competition in the marketing of consumer products are not in conflict with the FAA and its policy favoring arbitration. *Id.* at 1276 (citing 15 U.S.C. § 2302(a) of the MMWA, and *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 280, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995)("Congress, when enacting [the FAA], had the needs of consumers ... in mind.")). The *Davis* court also determined that the FTC's interpretation of the MMWA as precluding arbitration was unreasonable because it was based on grounds that do not support such an interpretation: Congress' grant of concurrent state and federal jurisdiction over MMWA claims, and reliance on a now disfavored hostility towards arbitration as inadequate to protect the rights of individual consumers. *Id.* at 1279-1280 (citing *McMahon*, 482 U.S. at 234 n.3, 107 S.Ct. 2332, as rejecting a similar argument advanced by the FTC in opposing binding arbitration in Securities and Exchange Act of 1934 cases under the reasoning of Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953)). The Fifth Circuit in *Walton* followed a similar approach, determining that Congress expressed a clear preference for arbitrating contractual claims in enacting the FAA, and that the MMWA's text, purpose, and legislative history do not reflect a contrary intent as to MMWA claims. *Walton,* 298 F.3d at 475- 478. The *Walton* court distinguished between the MMWA's pre-suit "informal procedures" and binding arbitration as a lawsuit "substitute" for a judicial forum. *Id.* at 475 (quoting *Mitsubishi Motors Corp.*, 473 U.S. at 628, 105 S.Ct. 3346 ("By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the

- 22 -

statute; it only submits to their resolution in an arbitral, rather than a judicial, forum."))

This court finds *Davis* and *Walton* to be the more persuasive authority. The court does not read 15 U.S.C. § 2310(a)(2) as an expression of Congressional intent to bar arbitration of MMWA claims or, as held by *Rickard*, 2003 WL 22060320, to bar arbitration of only MMWA breach of express warranty claims. The court adopts the reasoning of *Davis* and *Walton* as set forth herein, and concludes that the MMWA does not preclude enforcement of plaintiff's and GRVC's arbitration agreement

The court, having reviewed the authorities on both sides of this issue, finds, the position of the Fifth and Eleventh Circuits to be the better-reasoned position. Accordingly, the court concludes that the Magnuson-Moss Act does not bar enforcement of the arbitration provision contained in the Western warranty.

## IV.  Conclusion

For the reasons stated above, the court recommends that Western's motion for summary judgment be **GRANTED**, that plaintiffs' breach of implied warranty claim be **DISMISSED WITH PREJUDICE**, and that Western's alternate request for an order compelling plaintiffs to arbitrate their breach of written warranty claim be **GRANTED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v.

- 23 -

Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

                     s/Virginia M. Morgan
                     VIRGINIA M. MORGAN
Dated:   December 28, 2005         UNITED STATES MAGISTRATE JUDGE

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing Report and Recommendation was served upon counsel of record via the Court's ECF System and/or U. S. Mail on December 28, 2005.

                     s/Jennifer Hernandez
                     Case Manager to
                     Magistrate Judge Virginia M. Morgan